IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and CHARLES A. WHOBREY, as Trustee,<br><br>*Plaintiffs,*<br><br>v.<br><br>TRANSERVICE LOGISTICS, INC., a New York corporation,<br><br>*Defendant.* | Case No. 20-cv-4610<br><br>Judge<br><br>Magistrate Judge |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, one of the Pension Fund's present trustees, allege as follows:

### JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1191. Plaintiffs seek to recover employer contributions owed to the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") by Defendant in accordance with an applicable collective bargaining agreement, a participation agreement, a trust agreement, and the Pension Fund's plan.

2. This Court has jurisdiction over this action under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3. Venue lies in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), in that the Pension Fund is an "employee benefit plan" as that term is defined in ERISA and is administered at its exclusive place of business in Chicago, Illinois. Venue is also proper in this

Court pursuant to the forum selection clause contained in the Pension Fund's Trust Agreement, which designates this district as the appropriate forum for lawsuits brought to collect unpaid contributions.

## PARTIES

4. The Pension Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6. Plaintiff Charles A. Whobrey is a present trustee and "fiduciary" of the Pension Fund, as that term is defined in ERISA. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Mr. Whobrey is authorized to bring this action on behalf of the Pension Fund and its participants and beneficiaries in his capacity as a trustee and fiduciary.

7. Defendant, Transervice Logistics, Inc. ("Transervice"), is a corporation organized under the laws of the State of New York. Transervice is an "employer" and a "party-in-interest" as those terms are defined by ERISA §§ 3(5) and 3(14)(C), 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

8. Local Union No. 89 of the IBT ("Local 89") is a labor organization that represents, for the purpose of collective bargaining, certain employees of Transervice and employees of other employers in industries affecting interstate commerce.

**The 2013 CBA**

9. On or around February 8, 2013, Transervice and Local 89 agreed to be bound by a collective bargaining agreement that stated it shall be effective as of February 1, 2013 (the "2013 CBA"). A true copy of the 2013 CBA is attached as Exhibit 1.

10. Article 49.1 of the 2013 CBA ("Coverage") provides as follows:

Each full-time and part-time employee covered by this Agreement, who has been employed for thirty (30) days or more and is on the regular seniority list, and each temporary or any other non-regular employee will be covered by the Central States, Southeast and Southwest Areas Pension Fund.

11. Article 49.2 of the 2013 CBA ("Contributions") provides, in part, as follows:

The Employer agrees to pay to the Central States Pension Fund the costs to maintain current pension benefits for the life of the CBA with no cost to the employee . . . .

Article 49.2 of the 2013 CBA also provides weekly and daily contribution amounts that Transervice agreed to contribute for covered employees at Transervice's Louisville location.

12. Article 49.3 of the 2013 CBA ("Trust Agreement") provides, in part, as follows:

This fund shall be the Central States, Southeast and Southwest Areas Pension Fund. The Union and the Employer agree to be bound by and hereby assent to all of the terms of the Trust Agreement creating said Central States, Southeast and Southwest Areas Pension Fund, all of the rules and regulations heretofore and hereafter adopted by the Trustees of said Trust Fund pursuant to said Trust Agreement, and all of the actions of the Trustees in administering such Trust Fund in accordance with the Trust Agreement, and rules adopted. Their signatures to this collective bargaining agreement shall be deemed sufficient to signify their assent to and willingness to be bound by the terms of said Trust Agreement as fully as though they and each of them had indicated their assent of and executed said Trust Agreement.

The Employer hereby accepts as Employer Trustees, the present Employer Trustees appointed under said Trust Agreement and all such past or succeeding Employer Trustees as shall have been or will be appointed in accordance with the terms of the Trust Agreement. The Union hereby accepts as Union Trustees the present Union Trustees appointed under said Trust Agreement and all such past or succeeding Union Trustees as shall have been or will be appointed in accordance with the terms of the Trust Agreement of Trust and such other documents or papers as may be

necessary to effectuate said Welfare and Pension Programs and the purposes announced therein.

* * *

Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part-time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract and although contributions may be made for those weeks into some other Pension Fund. . . .

13. Article 55 of the 2013 CBA ("Termination") provides as follows:

This Agreement shall be effective as of February 1, 2013 and shall expire January 31, 2019; provided, however, that if neither party gives the other party written notice sixty (60) days prior to the said expiration date of such parties intention to terminate this Agreement, said Agreement shall continue for another year and from year to year thereafter, subject to sixty (60) days' notice of termination prior to any succeeding termination date.

14. Neither Transervice nor Local 89 sent any written notice of its intention to terminate the 2013 CBA at least sixty days prior to January 31, 2019 (*i.e.* by no later than December 2, 2018), as required under Article 55 of the 2013 CBA. As a result, the 2013 CBA "continue[d] for another year," through January 31, 2020.

15. The Pension Fund has requested that Transervice provide a copy of any written notice that Transervice or Local 89 sent pursuant to Article 55 of the 2013 CBA.

16. The only notice that has been provided by Transervice is a November 6, 2018 letter from Local 89 to Transervice in which Local 89 states its "desire to meet with [Transervice] at an early date for the purpose of negotiating a new contract." A copy of the November 6, 2018 letter is attached hereto as Exhibit 2.

**Participation Agreement**

17. Transervice and Local 89 are also parties to a participation agreement (the "Participation Agreement"). A true copy of the Participation Agreement is attached as Exhibit 3.

18. The introductory paragraph of the Participation Agreement provides, in part, as follows:

> This Agreement sets forth the terms under which the Employer will participate in the [Pension Fund] . . . in accordance with its collective bargaining agreement with the Union . . . .

19. Paragraph 1 of the Participation Agreement provides, in part, as follows:

> The Union and Employer agree to be bound by the Trust [Agreement] of the Pension Fund . . . and all amendments subsequently adopted as well as all rules and regulations presently in effect or subsequently adopted by the Trustees of the [Fund] and accept the respective Employer and Employee Trustees and their successors.

20. Paragraph 6 of the Participation Agreement provides, in part, as follows:

> When a new collective bargaining agreement is signed or the Employer and the Union agree to change the collective bargaining agreement, the Employer shall promptly submit the entire agreement or modification to the Fund['s] Contracts Department by certified mail (return receipt requested) at the address specified above. . . . The following agreements shall not be valid . . . (a) an agreement that purports to retroactively eliminate or reduce the Employer's statutory or contractual duty to contribute to the [Fund] . . . or c) an agreement that purports to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund.

21. Paragraph 14 of the Participation Agreement provides as follows:

> This Agreement may not be modified or terminated without the written consent of the [Fund]. To the extent there exists any conflict between any provisions of this Participation Agreement and any provisions of the collective bargaining agreement, this Participation Agreement shall control.

## **Trust Agreement and Plan Provisions**

22. Transervice agreed to be bound by the terms of the Pension Fund Trust Agreement (the "Trust Agreement") and all rules and regulations promulgated by the Trustees under that Trust Agreement. A true copy of the Trust Agreement is attached as <u>Exhibit 4</u>.

23. The first paragraph of Article III, Section 1 of the Trust Agreement provides, in part, as follows:

Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority . . . .

24. Article III, Section 7(a) of the Trust Agreement provides as follows:

An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement or participation agreement or any other written agreement accepted by the Fund (including any extension of a collective bargaining agreement through an evergreen clause or through an extension agreement of eighteen months or less) on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement. The following provisions contained in any agreement shall not be enforceable against the Fund (regardless of when the agreement was entered into): a) a provision contained in either a collective bargaining agreement or participation agreement or any agreement entered into by an Employer and Union subsequent to the collective bargaining agreement that purports to authorize the elimination or reduction of the duty to contribute to the Fund before the termination of the collective bargaining agreement and/or participation agreement and/or other agreement under its duration provision (including any extension through an evergreen clause) and b) a provision of an agreement that purports to eliminate or reduce the duty to contribute to the Fund contained in an agreement that extends a collective bargaining agreement for a period of eighteen months or less from its termination.

25. Article XIV, Section 4 of the Trust Agreement provides, in part, as follows:

Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). . . . Any judgment against an Employer for Employer Contributions owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in

accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

26. Article XIV, Section 11 of the Trust Agreement provides as follows:

A participating Employer and Union that contributes to the Fund shall be bound by the provisions of this Agreement and the obligations imposed by this Agreement shall survive the termination of the participation in the Fund. To the extent there is a conflict between this Agreement and any provisions of a collective bargaining agreement and/or a participation agreement and/or any other union-employer agreement, this Agreement shall control.

27. Section 3.01(a) of the Pension Plan provides, in part, as follows:

A Collective Bargaining Agreement shall be acceptable only if such agreement requires a Contributing Employer to make Employer Contributions . . . for the *entire term* of such Collective Bargaining Agreement. (Emphasis added.)

## **STATUTORY AUTHORITY**

28. ERISA § 515, 29 U.S.C. § 1145, provides as follows:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29. ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), provides as follows:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

      (i)      interest on the unpaid contributions, or

      (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## STATUTORY AND CONTRACTUAL VIOLATIONS

30.    On or around February 1, 2019, the Pension Fund received a letter dated January 30, 2019, from Transervice that attached a copy of a new collective bargaining agreement between Transervice and Local 89 (the "2019 CBA"). A copy of that letter and the 2019 CBA are attached hereto as <u>Exhibit 5</u>.

31.    In the letter, Transervice states that effective January 31, 2019, its "obligation to make contributions to the Pension Fund will cease and Transervice will withdraw from the Pension Fund with respect to this bargaining unit." (As for other bargaining units, Transervice has acknowledged that it had an obligation to contribute, and did contribute, to the Pension Fund for periods after January 31, 2019, on behalf of employees who were members of a bargaining unit represented by a local union other than Local 89, specifically, on behalf of members of Local Union No. 135 affiliated with the IBT.)

32.    Article 49 of the 2019 CBA ("Pensions") purports to eliminate Transervice's obligation to contribute to the Pension Fund on behalf of Local 89 members "[e]ffective on January 31, 2019."

33. The last week for which Transervice paid pension contributions to the Pension Fund on behalf of employees covered by the 2013 CBA was the week ending on February 2, 2019.

34. Under Article 55 of the 2013 CBA, the 2013 CBA remained in effect after January 31, 2019, because neither party served on the other party timely "written notice . . . of [its] intention to terminate" the 2013 CBA.

35. Under Article III, Section 7(a) of the Trust Agreement, paragraph 6 of the Participation Agreement, and Section 3.01(a) of the Pension Plan, as well as under principles of contract law applicable to third-party beneficiaries, the provision in Article 49 of the 2019 CBA that purports to eliminate Transervice's duty to contribute to the Pension Fund on behalf of employees covered by the 2013 CBA effective January 31, 2019, is not binding on the Pension Fund.

36. Further, under Article III, Section 7(a) of the Trust Agreement, paragraph 6 of the Participation Agreement, and Section 3.01(a) of the Pension Plan, Transervice's duty to contribute to the Pension Fund on behalf of employees covered by the 2013 CBA could not be terminated before January 31, 2020.

37. As a result, the Pension Fund continued to bill Transervice for pension contributions owed for the weeks encompassed by the CBA period of February 1, 2019, through January 31, 2020 (*i.e.* the weeks from February 3, 2019, through February 1, 2020).

38. Transervice received billing notifications from the Pension Fund for employees covered by the 2013 CBA for the period from February 3, 2019, through February 1, 2020.

39. For the period from February 3, 2019, through February 1, 2020, Transervice has not remitted contributions to the Pension Fund on behalf of employees covered by the 2013 CBA,

TM: 595121 / 20111841 / 8/6/2020

-9-

which are now past due, and has thus failed to perform its statutory and contractual duties under ERISA, the 2013 CBA, the Participation Agreement, and the Trust Agreement.

40. The Pension Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Pension Fund bills the employers for contributions.

41. Separate from its participation in the Pension Fund, Transervice participates in the Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health Fund") under the terms of the 2013 CBA and the Participation Agreement, among other agreements. For the period from February 3, 2019, through February 1, 2020, Transervice has reported the work history of covered employees under the 2013 CBA to the Health Fund.

42. Based upon the employee work history reported by Transervice to the Health Fund, Transervice owes the Pension Fund approximately $2,634,606.63 in unpaid contributions (not including interest) for the period of February 3, 2019, through February 1, 2020.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant in favor of Plaintiffs, pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), for:

(i) the unpaid contributions owed to the Pension Fund on behalf of all employees performing covered work for the weeks encompassed by the CBA period of February 1, 2019, through January 31, 2020 (*i.e.* the weeks from February 3, 2019, through February 1, 2020);

      (ii)    interest on the unpaid contributions computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

      (iii)    an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

      (iv)    attorneys' fees and costs;

    (b)    Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

    (c)    For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Frank Blechschmidt*
Frank Blechschmidt (ARDC #6308606)
Central States Funds, Law Department
8647 W. Higgins Road, 8th Floor
Chicago, IL 60631-2803
(847) 777-4088
fblechsc@centralstatesfunds.org

August 6, 2020                          *Attorney for Plaintiffs*